*In re* HYDE, Bankrupt.

*In re* KING, Bankrupt.

(*Circuit Court, S. D. New York.* March 28, 1881.)

1. BANKRUPTCY COURT—POWER TO SET ASIDE FRAUDULENT DEEDS.

The district court has power, while sitting in bankruptcy and exercising the jurisdiction conferred by the bankrupt law of 1841, by summary order, to set aside and order to be surrendered and cancelled deeds given by the official assignee, which are improvidently, irregularly, or without due authority executed by him, or which were procured to be executed by imposition and fraudulent practices upon the court, or which were designedly so drawn as to be grants in excess of or varying in material particulars from the orders of the court under which they purport to be executed, while the same are still in the hands of the party by whom they were so procured from the assignee, and who had notice of said irregularities and defects, and who gave no value therefor, except certain sums paid to the official assignee as fees, upon the petition of a party not a creditor of the bankrupt, and having no interest in the matter, except that he is in the possession of land, claiming title thereto, and that he has been subjected to liti-

gation, or is threatened with litigation, in respect to said land, based upon the deeds sought to be avoided, after the discharge of the bankrupt, and when there are no longer any known assets to be distributed among creditors.—[ED.

*Wm. Allen Butler,* for petitioners.

*Geo. F. Betts,* for respondents.

BLATCHFORD, C. J. It was provided by section 6 of the bankruptcy act of August 19, 1841, (5 St. at Large, 445,) that "the district judge may adjourn any point or question arising in any case in bankruptcy into the circuit court for the district, in his discretion, to be there heard and determined, and for this purpose the circuit court of such district shall be deemed always open." Under this provision the following question has been adjourned into this court by the district judge of this district, as a question arising in the above-entitled cases, which are cases in the district court for this district, in bankruptcy, under the said act, to be here heard and determined: "Whether the district court has power, sitting in bankruptcy and exercising the jurisdiction conferred by the bankrupt law of 1841, by summary order, to set aside and order to be surrendered and cancelled deeds given by the official assignee, which were improvidently, irregularly, or without due authority executed by him, or which were procured to be executed by imposition and fraudulent practices upon the court, or which were designedly so drawn as to be grants in excess of or varying in material particulars from the orders of the court under which they purport to be executed, while the same are still in the hands of the party by whom they were so procured from the assignee, and who had notice of said irregularities and defects, and who gave no value therefor, except certain sums paid to the official assignee as fees, upon the petition of a party not a creditor of the bankrupt, and having no interest in the matter, except that he is in the possession of land, claiming title thereto, and that he has been subjected to litigation, or is threatened with litigation, in respect to said land, based upon the deeds sought to be avoided. Whether this power, if it can be exercised at all, can be exercised after the discharge of the bankrupt, and

when there are no longer any known assets to be distributed among creditors."

The question adjourned must be taken to be based on the facts asserted in the statement of the question: (1) That deeds of land were given by the official assignee, purporting to be executed under orders made by the district court; (2) that the deeds were executed by the assignee improvidently, irregularly, or without due authority; (3) that the deeds were procured to be executed by the assignee by imposition and fraudulent practice upon the court; (4) that the deeds were designedly so drawn as to be grants in excess of, or varying in material particulars from, the said orders; (5) that the deeds are still in the hands of the party who so procured them from the assignee; (6) that the said party had notice of the said irregularities and defects; (7) that the said party gave no value for the said deeds except certain sums paid to the official assignee as fees.

On the foregoing facts the questions to be considered are—(1) Whether the district court, sitting in bankruptcy, and exercising the jurisdiction conferred by said act, has power, by summary order, to set aside said deeds, and power also to order them to be surrendered and cancelled; (2) whether it can do so on the petition of a party who is not a creditor of the bankrupt and has no interest in the matter except that he is in the possession of land, claiming title thereto, and that he has been subjected to litigation, or is threatened with litigation, in respect to said land, based upon said deeds; (3) whether it can do so after the discharge of the bankrupt, and when there are no longer any known assets to be distributed among creditors.

The order of adjournment shows that the question was adjourned on the application of the respondent holding the deeds referred to, and that he appeared by counsel before the district court. He appears in this court by counsel, who urges that the inquiries made should be answered in the negative. It is contended that the inquiry is not as to the inherent power of the district court to grant the relief referred to, under the facts stated, but is as to its power to do so on

the petition of such a party as the one specified; that such party is not legally entitled to call on the respondent to answer; that such party is a stranger, and has no right to intervene, not being a creditor, and having no interest in augmenting the fund, or in its distribution; and that the discharge of the bankrupt and the non-existence of assets for distribution amount to a close of the proceedings in bankruptcy, and terminate the power of the court in bankruptcy over the case.

Before adjourning the above question the district judge expressed his views in a written decision on the question. He held that the party applying had such an interest in the matter that he could maintain the petition; that he was not a mere stranger, asking to have the act vacated on grounds of public policy, but appeared as a party whose rights were injuriously affected by the act of the officer of the court; that the court had power to relieve him if he made out his case; and that the proceeding in bankruptcy had not reached its final consummation so long as there remained any order, decree, or action for the court, in the proper and usual exercise of the jurisdiction in like cases, to enter or to take, or any redress or relief to be given to any party or person properly applying to the court therefor in the case.[*]

The inherent power exists in every court to set aside a deed which its officer has given, gratuitiously and without consideration, for no value except a fee to the officer, where the deed was given improvidently, irregularly, or without due authority, or where the deed was procured to be executed by imposition and fraudulent practices on the court, or where it was designedly so drawn as to be a grant in excess of, or varying in material particulars from, the order of the court under which it purports to be executed, while the deed is still in the hands of the party who procured it from the officer, such party having procured it under the circumstances above stated, and having notice when he so procured it that the irregularities and defects above referred to existed.

There is no good faith in such a transaction; no purchase,

[*] See In re Hyde, 3 FED. REP. 839.

no vested right. The right of a *bona fide* purchaser without notice has not intervened. There has been a wilful wresting of the action of the court by unlawful means, and the person who was a party to and an actor in the transaction cannot be heard to claim that he can profit by the transaction, or that the court should not be allowed to re-instate itself in the position in which it was before the unlawful transaction took place. The power existing to set aside the deed and treat it as if it had never been executed, to sweep it away as a cloud on the title of the court and its officer, to restore the integrity of the action of the court and its officer, does not detract from the vigor or efficacy of the power that it is set in motion by a person against whom the deed operates injuriously. No one is ever likely to complain of the wrongful act, except a person aggrieved thereby. A person in the possession of land, and claiming title thereto, and who has been sued, or is threatened to be sued, on the deed, in respect to such land, has a sufficient interest in the matter to require the holder of the deed, holding it under the circumstances stated, to answer an application to the court, made by such person, to set aside the deed. Of course this is to be done on a proper petition by such person, with an opportunity to the holder of the deed to answer it, and to meet the proofs of the applicant, and to put in proofs himself, according to the usual procedure in a litigation.

Nor is there any good reason why this should not be done by a petition, with the usual forms thereunder, in an equity proceeding, but in a summary way, as distinguished from a plenary suit by bill in equity; in other words, in the form of proceedings by petition in the course of a proceeding in bankruptcy.

By section 6 of the act of 1841, it is provided that the jurisdiction of the district court shall extend "to all acts, matters, and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy." The act of March 3, 1843, (5 St. at Large, 614,) repealing the act of 1841, provides that the repealing act "shall

not affect any case or proceeding in bankruptcy commenced" before its passage, "or any pains, penalties, or forfeitures incurred under the said act, but every such proceeding may be continued to its final consummation in like manner as if this act had not been passed." It cannot properly be said that the proceeding in bankruptcy has been closed, or has reached its final consummation, although the bankrupt has been discharged, and no assets remain to be distributed among creditors, when a deed given under the circumstances in question remains outstanding, illegal, unauthorized, or fraudulent, and when, as a consequence of setting it aside, what was conveyed by it, and seems to be so valuable a possession to the party who holds it, will then remain in the hands of the court, to be disposed of properly by another deed.

Nor can it be doubted that the power to order the deed to be surrendered by the holder, and then to be cancelled, exists equally with the power to set aside the deed. The power as against the holder arises out of the facts of the case, and out of the jurisdiction obtained over his person by the proper service of process on him under the petition, and, if the frame of the petition extends to it, the court, which has authority to vacate the unlawful, collusive, and fraudulent act and deed, has authority, on the same basis, to enforce the delivery up of the deed to the court by the holder.

The jurisdiction in a similar case was exercised by the district court for this district in 1862, under the bankruptcy act of 1841, *In re Conant*. In 1858, the official assignee in bankruptcy of Conant conveyed certain land in Illinois to one Brown, who conveyed it to one Jones. One Taggard had bought the same land in 1843, and obtained a deed of it, and had gone into possession of it, and held it until he died, in 1851. His heirs, having sued Jones in trespass, in Illinois, to establish their title to said land, petitioned the district court, in 1861, for relief against the deed of the assignee. The assignee and Brown and Jones were cited to answer. The court found that it had been induced to order the sale by the assignee under the impression on the part of the court that the land was without value, and that the sale was to be

made only to relieve the land in the hands of Taggard from any cloud or technical infirmity of title; that the court had given the title gratuitously to a party who might use it in fraud of the estate of the bankrupt or of an honest purchaser of it; and that the order of sale ought not to stand, but should be rescinded, as having been obtained by a party cognizant of all the facts impeaching its equity and justice. The above state of facts was recited in an order which the court made July 7, 1862, vacating and declaring void the order of sale made in 1858, and declaring null and void the deed from the assignee to Brown, and ordering the assignee and Brown and Jones to deliver the deed to the clerk of the court to be cancelled.

In *In re Mott*, in the district court for this district, under the bankruptcy act of 1841, the official assignee had, on the order of the court, made in 1860, sold a certain interest of the bankrupt in the real estate of his deceased grandfather, at private sale, to one Delaplaine, for $800 for the property, and $200 to the assignee for his costs and expenses in the matter, and had given a deed for the property to Delaplaine. Afterwards a bank, which was a creditor of the bankrupt, but had not proved its debt in the bankruptcy proceedings, applied to the court by petition, setting forth that before the order of sale was procured the assignee had agreed to convey the property to the bank for a nominal consideration, and $25 as his costs, and that he had received the $25 from the bank. The petition prayed for an order declaring void the sale and deed to Delaplaine, and directing the deed to be surrendered and cancelled, and $800 in court, received from Delaplaine, to be returned to him, and directing the assignee to convey his interest in said real estate to the bank for a nominal consideration. Delaplaine and the assignee were served personally with the petition, and resisted the granting of its prayer.

The district court, in 1861, ordered the case and the proceedings to be adjourned into the circuit court on certain stated questions, one of which was whether the bank could

v.6,no.6—38

carry on the proceedings against the assignee or Delaplaine without having first proved its debt. The matter was heard before Mr. Justice Nelson in the circuit court, and he made a written decision on November 28, 1863, in which he said that he was satisfied that the order of sale was improvidently granted, and that it should be set aside; and also that the conveyance under it by the assignee to Delaplaine should be delivered up and cancelled, and the money paid by him, and in court, be refunded to him, and that received by the assignee, and not in court, be refunded by the assignee, and that he did not doubt that the district court had full power and jurisdiction to make an order to the above effect. As to the prayer for a conveyance to the bank by the assignee, he said that the district court had no power to order it to be made, and that the asset ought to be sold at public auction. Thereupon the district court, by an order made June 17, 1864, dismissed the petition of the bank, and ordered that the sale by the assignee to Delaplaine be set aside as irregular, inequitable, and void, and that the order for such sale be revoked, as having been obtained by proceedings that were irregular and inequitable. The written decision of the district court, resulting in said order, proceeds, in not ordering a deed to be given to the bank, and in not awarding any further relief to the bank against Delaplaine or the assignee, on the view that the bank showed no subsisting title or interest in itself warranting the granting of such further relief. It had no such interest as that of being in possession of the land, claiming title to it, which makes the distinction between the petitioner in that case and the petitioner in the *Conant Case* and in the present case. But the court, set in motion by the petition of the bank, set aside the deed, although it did not order it to be delivered up.

Nothing is adjourned in the present case into this court but the question of power on the facts stated. The evidence taken is not before this court. It is not intended, therefore, in anything that has been said, to express or intimate any opinion by this court as to what ought or ought not to be

done by the district court in the case, under the existence of the power.

The question adjourned must, in its entirety, be answered in the affirmative.